UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTIAN SABOL, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>PAYPAL HOLDINGS, INC., et al.,<br><br>    Defendants. | Case No. 23-cv-05100-JSW<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 49 |

Now before the Court for consideration is Plaintiffs' motion to dismiss. Having considered the parties' papers and relevant legal authority, the Court finds the motions suitable for disposition without oral argument. *See* N.D. Civ. L.R. 7-1(b). For the reasons set forth below, the Court **HEREBY GRANTS** the motion to dismiss.

## BACKGROUND

PayPal is the dominant eCommerce payments platform in the United States, handling billions of transactions annually. (CAC ¶ 22.) To accept PayPal, eCommerce merchants in the United States enter form contracts with PayPal that prohibit offering price discounts when consumers use non-PayPal means of payment. (*Id.* ¶ 3.) Framed as a prohibition on "surcharges," PayPal's anti-discrimination ("ADP") provisions forbid any PayPal-accepting merchant from offering discounts on goods purchased with non-PayPal means of payment. (*Id.* ¶¶ 33–36.) The rules state that merchants shall not impose "a surcharge or any other fee for accepting PayPal as a payment method" and that any fees charged on PayPal transactions may not be higher than fees charged "for non-PayPal transactions." (*Id.* ¶ 34.) Under these provisions, merchants cannot "steer" consumers to more cost-effective payment methods other than Paypal by offering discounts to Paypal's rivals. Any such attempt would be treated as a "surcharge" on PayPal in violation of the Anti-Steering Rules. (*Id.* ¶ 35.)

Plaintiffs allege that PayPal's ADPs generate higher eCommerce prices along with other anticompetitive effects. Without these restraints, Plaintiffs allege, eCommerce merchants would naturally offer consumers discounts to use cheaper payment methods, steering them away from Paypal's industry high fees. (*Id.* ¶¶ 39–45.) In effect, PayPal and its co-conspiring merchants have eliminated this natural form of price competition and replaced it with a price floor below which the merchants have agreed they will not discount prices. (*Id.* ¶ 44.) With this price floor in place, Paypal's rivals see little to gain by undercutting PayPal's fees. (*Id.* ¶¶ 50–51.)

Plaintiffs further allege that PayPal's ADPs prevent non-price forms of steering by preventing PayPal merchants from exhibiting any "preference for other payment methods" or encouraging consumers to "use an alternate payment method." (*Id.*¶ 36.) These restrictions prevent merchants from providing consumers with basic pricing information to influence their selection of payment methods. For example, a PayPal merchant cannot tell its customers that PayPal charges industry-high fees, or that selecting cheaper methods of payment would assist the merchant in keeping its retail prices competitive. (*Id.* ¶ 37.)

Plaintiffs allege that Paypal's implementation of the ADPs injured Plaintiffs and the proposed Class because they purchased goods in eCommerce using alternatives to PayPal and were thus deprived of discounts they could have otherwise secured. (*Id.* ¶¶ 16–19, 45, 82.) Plaintiffs assert a claim under Section 1 of the Sherman Act, as well as claims under California's Cartwright Act and Unfair Competition law ("UCL"). (*Id.* ¶¶ 94–116.) Plaintiffs also seek an injunction against Paypal's further use of the ADPs. (*Id.* ¶ 82.)

I. **LEGAL STANDARD**

   A. **Rule 12(b)(1)**

Under Rule 12(b)(1), a district court should dismiss a case when it "lacks statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). In reviewing a motion to dismiss under Rule 12(b)(1), the court must accept all material factual allegations in the complaint as true, but should not draw "argumentative inferences favorable to the party asserting jurisdiction." *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968

1  F.2d 196, 198 (2d Cir. 1992) (citing *Norton v. Larney*, 266 U.S. 511, 515 (1925)). The plaintiff bears the burden of showing, by a preponderance of the evidence, that the court has subject matter jurisdiction over its claims. *See id.*

### B. Rule 12(b)(6)

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[D]etailed factual allegations are not required" to survive a motion to dismiss if the complaint contains sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)). "Labels and conclusions[ ] and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 50 U.S. at 555.

When evaluating a Rule 12(b)(6) motion to dismiss, a district court accepts as true all material facts alleged in the complaint and draws all reasonable inferences in favor of the plaintiff. *Faulkner v. ADT Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013). A district court should grant leave to amend unless the court determines the pleading could not "possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

## II. SHERMAN ACT CLAIM

### A. Antitrust Standing

It is "mandatory" for the plaintiff to "demonstrate that the harm the plaintiff has suffered or might suffer from the [alleged] practice" constitutes "an 'injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful.'" *City of Oakland v. Oakland Raiders*, 20 F.4th 441, 456 (9th Cir. 2021). *Am. Ad Mgmt., Inc. v. Gen. Tel. Co.* sets forth the relevant factors (the "*American Ad* factors") to analyze standing: (1) "nature of the plaintiff's injury; that is, whether it was the type the antitrust laws were intended to forestall," (2) "directness of the injury," (3) "speculative measure of the harm," (4) "risk of duplicative recovery," and (5) "complexity of apportioning damages." 190 F.3d 1051, 1054–55 (9th Cir. 1999) (citing *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 535 (1983)).

/ / /

### 1. Nature of Plaintiffs' Injury

Courts have identified "four requirements for antitrust injury: (1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from that which makes the conduct unlawful, and (4) that is of the type the antitrust laws were intended to prevent." *Am. Ad Mgmt.*, 190 F.3d at 1055. Plaintiffs do not adequately allege that the injury described flows from the allegedly unlawful conduct for reasons described in the section analyzing the directness and the speculative nature of injury.

Plaintiffs also allege injury insofar as the Anti-Steering Rules prevent merchants from conveying the information consumers need to make an informed choice between payment methods. (CAC ¶¶ 9, 57–58). Plaintiffs do not explain how this theory of harm does not ultimately rely on the same assumptions as the other flawed theories of harm.

### 2. Directness of the Injury and Speculative Nature of the Injury

The "directness" *American Ad* factor "looks to whether [the plaintiff's] alleged injury was the direct result of [the defendant's] allegedly anticompetitive conduct" and focuses on "the chain of causation between [the plaintiff's] injury and the alleged restraint" of trade. *Am. Ad Mgmt.*, 190 F.3d at 1058. To support a finding of standing, "[t]he harm may not be derivative and indirect or secondary, consequential, or remote." *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1004 (9th Cir. 2008). Alleged injuries that are "derivative and indirect or secondary, consequential, or remote" do not support antitrust standing. *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1004 (9th Cir. 2008). Similarly, the "speculative" *American Ad* factor focuses on the "links in the chain of causation" between the alleged antitrust violation and the injury. *City of Oakland*, 20 F.4th at 460.

Plaintiffs do not allege that they have a relationship with PayPal. Nor do they seek damages for purchases made using PayPal or for fees paid to Paypal. Instead, Plaintiffs put forward two allegedly distinct theories of harm.

First, Plaintiffs contend that Paypal's ADP's create a price "floor" by prohibiting discounting based on payment method. Because Paypal's fees are higher than its competitors, absent Paypal's ADPs, merchants would naturally provide discounts for customers who use

4

Paypal's cheaper rivals. In other words, regardless of the payment method the consumer selects, and regardless of the cost advantages it may have over PayPal, the co-conspiring merchants agree not to compete with discounts below the price they charge whenever PayPal is selected.

Defendant contends that the first theory of harm is too attenuated because it necessarily depends on the independent actions of millions of merchants choosing to provide discounts for customers that do not use Paypal. The Court agrees. It does not necessarily follow that absent the ADPs, millions of merchants would naturally decide to offer specific discounts for customers who choose not to use Paypal either at the point of sale or at some other stage in the transaction process. Plaintiffs provide no direct support for the contention that they can maintain standing given this high degree of attenuation. Accordingly, the Court is not convinced that the first theory of harm allows Plaintiffs to maintain standing.

Under Plaintiffs' second theory of harm, Plaintiffs contend that they would have paid lower prices but for PayPal's ADPs even without considering potential discounts for non-PayPal transactions. Plaintiffs allege that without the ADPs, if PayPal raised its gateway fees, merchants could then fold those increased into prices only for transactions involving PayPal. Unable to bake PayPal's fees only into transactions using Paypal, merchants are forced to increase prices across the board. Accordingly, Plaintiffs allege, the ADPs assure Paypal that if it raises its fees above a competitive rate, at least part of the increase will be paid not by customers using Paypal, but by customers using rival gateways. Plaintiffs further allege that if steering were permitted, payment gateways could "win" transactions by reducing their gateway fees below competitors' fees, thus encouraging merchants to steer transactions toward their platforms. Unable to steer consumers away from PayPal, however, rival gateways stand to gain little by undercutting PayPal on price.

Plaintiffs' second theory of harm is more attenuated than the first. In the first instance, it relies on a similar assumption as in the first theory: that absent the ADPs, millions of merchants would charge consumers higher prices to use Paypal. Plaintiffs' second theory further relies on the assumption that absent the ADPs, rival payment processors would lower their prices to benefit from merchant steering. However, Plaintiffs fail to allege facts that explain the significance of the allegedly passed-on transaction fees relative to the other numerous pricing factors for any goods or

5

services Plaintiffs allegedly purchased.  *See Jones v. Micron Tech., Inc.*, 400 F. Supp. 3d 897, 913 (N.D. Cal. 2019) (the price of a good reflects "numerous other components, all of which collectively determine the final price actually paid by [P]laintiffs for the final product"); *see also Oliver v. Am. Express Co.*, 2020 WL 2079510, at *8–10 (E.D.N.Y. Apr. 30, 2020) (holding that even if plaintiffs adequately alleged that American Express's anti-steering provisions caused other credit card networks to raise their own transaction fees, which merchants then passed on to consumers, that effect was "incidental to"—not proximately caused by—the ADPs at issue).[1]  Although Plaintiffs need not plead facts to entirely isolate such a pass-through effect, the Complaint falls short in this regard.  As such, Plaintiffs' second theory of harm similarly fails to convince.

### 3. Duplicative Recoveries

Defendant points to the risk of duplicative recoveries if PayPal's co-conspiring merchants assert antitrust claims on similar facts.  The Court notes that the merchants' cause of action would be for lost profits rather overcharges, as Plaintiffs allege here.  Lost profits and overcharges, however, are "fundamentally different theories of harm" that can coexist without duplicative recovery.  *See* 8 P. Areeda & H. Hovenkamp, ANTITRUST LAW (4th ed. 2013) at 346 (when courts "award lost profits to intermediaries and an overcharge only to consumers, no overcharge need be allocated"); *Apple Inc. v. Pepper*, 139 S. Ct. 1514, 1525 (2019) (lost profits and overcharges are "fundamentally different theories of harm").  Accordingly, this case does not appear to present a risk of duplicative recoveries.

---

[1] Plaintiffs rely heavily on the *Illinois Brick* co-conspirator exception, which precludes "indirect purchasers in a chain of distribution . . . from suing for damages based on unlawful overcharges passed on to them by intermediates in the distribution chain who purchased directly from the alleged antitrust violator."  *State of Ariz. v. Shamrock Foods Co.*, 729 F.2d 1208, 1211–12 (9th Cir. 1984) (citing *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 746); *see also Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 545, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983) (applying the *Illinois Brick* rule based on "the problems of identifying damages and apportioning them among directly victimized contractors and subcontractors and indirectly affected employees and union entities").  However, it is not clear that this exception could apply in a case in which the plaintiffs did not purchase anything from the defendant or from a party in the defendant's distribution chain.

### 4. Apportionment of Damages

Defendant contends that Plaintiffs' theory will require the Court to determine the degree to which any injury caused by PayPal's ADPs affected consumers relative to the eCommerce merchants. Although such apportionment of damages appears complex, the complexity of apportionment alone does not factor strongly against standing.

\* \* \*

Weighing each of the factors analyzed above, the Court holds that Plaintiffs' claims are too indirect and speculative to maintain antitrust standing. *See City of Oakland*, 20 F.4th at 461.

## III. STATE LAW CLAIMS

### A. Cartwright Act

Plaintiffs' Cartwright Act claim is based on the same allegations as their Sherman Act claim. (*See* CAC ¶¶ 101–06.) "Because the Cartwright Act mirrors the Sherman Act, the claims rise and fall together." *Persian Gulf Inc. BP W. Coast Prods. LLC*, 632 F. Supp. 3d 1108, 1175 (S.D. Cal. 2022); *see also Cnty. of Toulumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1160 (9th Cir. 2001) (affirming dismissal of Cartwright Act claim for same reasons as Sherman Act claim); *In re WellPoint, Inc. v. Out-of-Network "UCR" Rates Litig.*, 2013 WL 12130034, at \*11 (C.D. Cal. July 19, 2013) (applying *Associated General* factors to determine standing under the Cartwright Act). Accordingly, the Court holds that Plaintiffs lack standing under the Cartwright Act.

### B. UCL

Plaintiffs also base their UCL claim on the same allegations as their Sherman Act claim. (*See* CAC ¶¶ 109–16.) First, Plaintiffs fail to state a claim under the "unlawful" prong as they fail to allege a predicate antitrust violation. *See In re Dynamic Random Access Memory Indirect Purchaser Litig.*, 2020 WL 8459279, at \*11 (N.D. Cal. Nov. 24, 2020) (dismissing "unlawful" UCL claim "for lack of a predicate violation of a separate statute.") Second, Plaintiffs fail to state a claim under the "unfair" prong because a UCL claim sounding in antitrust rises and falls with the antitrust claim, even if it is asserted as an "unfairness" claim. *See HomeLight, Inc. v.*

*Shkipin*, 2024 WL 940089, at *4 (N.D. Cal. Mar. 5, 2024) (dismissing UCL claim under the "unfair" prong because it was "based on the same . . . conduct underlying the dismissed unlawful [claim]."

**CONCLUSION**

For the reasons explained above, the Court **HEREBY GRANTS** motion to dismiss with leave to amend. Plaintiffs shall file an amended complaint within 45 days of the date of this Order.

**IT IS SO ORDERED.**

Dated: August 23, 2024

JEFFREY S. WHITE

United States District Judge