UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTIAN SABOL, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>PAYPAL HOLDINGS, INC., et al.,<br><br>Defendants. | Case No. 23-cv-05100-JSW<br><br>**ORDER GRANTING, IN PART, MOTION TO DISMISS FIRST AMENDED COMPLAINT, WITH FINAL LEAVE TO AMEND**<br><br>Re: Dkt. No. 72 |

Now before the Court for consideration is the motion to dismiss filed by PayPal Holdings, Inc. and PayPal, Inc. (collectively "PayPal"). The Court has considered the parties' papers, relevant legal authority, and the record in this case, and the Court HEREBY GRANTS, IN PART, PayPal's motion.

## BACKGROUND[1]

On October 4, 2023, Christian Sabol and Samantha Russell filed a putative class action complaint alleging PayPal violated Section 1 of the Sherman Act, California's Cartwright Act, and California's Unfair Competition Law ("UCL"). The Court granted PayPal's motion to dismiss on the basis that Sabol and Russell failed to allege antitrust standing. Sabol v. PayPal Holdings, Inc., 2024 WL 3924686 (N.D. Cal. August 23, 2024) ("Sabol"). On October 7, 2024, Sabol, Russell, Laura McKinney, Chelcie Blake, Gregory Nohrenberg, and Stephen Phillips (collectively "Plaintiffs") filed the First Amended Complaint ("FAC") and reasserted the claims under the Sherman Act, the Cartwright Act, and the UCL. Plaintiffs added claims for alleged violations of the antitrust and consumer protection statutes of Florida, Minnesota, North Carolina, and Oregon.

---

[1] The Court accepts Plaintiffs' allegations and reasonable inferences therefrom as true. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Plaintiffs allege the Court has federal question jurisdiction and has jurisdiction under the Class Action Fairness Act.

PayPal is the dominant eCommerce payment platform in the United States and has been "a mainstay in the online payments industry for more than two decades." (Dkt. No. 69, Redline Version of First Amended Complaint ("FAC") ¶¶ 25-26.) "[M]ore than 82% of the top 1000" online retailers accept PayPal. (*Id.* ¶ 34.) PayPal charges transaction fees to merchants who want to use its gateway, which consist of a percentage of the transaction and a fixed fee. PayPal's transaction fees are higher than its rivals' transaction fees. (*Id.* ¶ 33, 44-45.)

PayPal also offers consumers "digital wallets" to make online purchases from merchants who use PayPal's gateway. Each Plaintiff shops online at merchants who accept PayPal, but they do not usually PayPal. (*Id.* ¶¶ 16-21.) Sabol generally uses credit cards and does not have a PayPal account. (*Id.* ¶ 16.) Russell has not used a PayPal account in the last four years and generally uses credit cards or debit cards. (*Id.* ¶ 17.) McKinney's and Phillips' use of PayPal is limited. Like Russell, they generally use other methods of payment. (*Id.* ¶¶ 18-19.) Blake "often uses her debit card or other non-PayPal forms of payment." (*Id.* ¶ 20.) Nohrenberg uses non-PayPal forms of payment for most online transactions. (*Id.* ¶ 21.)

PayPal requires merchants to enter a User Agreement that contains two provisions that form the basis of Plaintiffs' claims (the "Anti-Steering Rules"). First, merchants are not permitted to impose "a surcharge or any other fee for accepting PayPal as a payment method." (*Id.* ¶¶ 37-38.) Second, merchants cannot exhibit preferences for other payment methods and cannot discourage consumers from using PayPal. (*Id.* ¶ 39.) The Anti-Steering Rules "operate as what economists call a 'platform most-favored nation' restraint or 'PMFN.'" (*Id.* ¶ 42.) "[T]he economic literature and modelling confirms that these types of [PMFN's] 'typically raise platform fees and retail prices.'" (*Id.* (quoting Andre Boik & Kenneth S. Corts, *The Effects of Platform Most-Favored Nation Clauses on Competition and Entry*, 59 J.L. & Econ. 105 (Feb. 2016)).) Plaintiffs contend that if PayPal did not impose the Anti-Steering Rules, merchants could and

would offer discounts to customers who use less expensive payment gateways.[2] (Id. ¶¶ 46, 49.) Because of the Anti-Steering Rules, "PayPal and its co-conspiring merchants have eliminated this natural form of price competition" and have replaced it with minimum retail prices. (Id. ¶¶ 48; see also id. ¶¶ 43-47.)

Plaintiffs also contend that PayPal's Anti-Steering Rules also inflate transaction fees across the industry, which increases overall retail prices because eCommerce merchants bake PayPal's higher transaction fees into retail prices.[3] (Id. ¶ 50.) Because eCommerce margins are thin, eCommerce merchants "compete largely by pricing aggressively to increase sales volume. … [I]n competitive industries with slim margins like eCommerce, prices are highly responsive to changes in costs. Inflated payment processing costs are thus likely to be fully reflected in eCommerce prices[.]" (Id. ¶ 75.) Other payment gateways cannot benefit from substantially undercutting PayPal's transaction fees, so PayPal has no incentive to reduce them. (Id. ¶¶ 52-61, 71.)

The Court will address additional facts as necessary in the analysis.

## ANALYSIS

### A. Applicable Pleading Standards.

The Court evaluates PayPal's motion pursuant to Federal Rule of Civil Procedure 12(b)(6). *See City of Oakland v. Oakland Raiders, Inc.*, 20 F.4th 441, 452 (9th Cir. 2021) (distinguishing antitrust standing from Article III standing); *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) (statutory standing is evaluated under Rule 12(b)(6)). A plaintiff's obligation to provide the grounds of their "entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.] … Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (citations omitted). "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

---

[2] The Court refers to this as Plaintiffs' discount theory of antitrust standing in the analysis.

[3] The Court refers to this as Plaintiffs' pricing theory of antitrust standing in the analysis.

A court generally should grant a plaintiff leave to amend. *See, e.g., Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990). However, if a plaintiff has previously amended and failed to correct deficiencies, a court's "discretion to deny leave to amend is particularly broad[.]" *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) (quoting *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989)).

**B.     The Elements of a Sherman Act Claim and of Federal Antitrust Standing.**

Section 1 of the Sherman Act prohibits any "contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States." 15 U.S.C. § 1. To state a claim, Plaintiffs must allege facts that show (1) a contract, combination or conspiracy among two or more persons or distinct business entities; (2) by which the persons or entities intended to harm or restrain trade or commerce among the several States, … (3) which actually injures competition." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008).

Plaintiffs allege the User Agreement containing the Anti-Steering rules is the relevant contract, and the parties agree that the rule of reason applies in this case. The rule of reason requires Plaintiffs to plead the Anti-Steering Rules have a "substantial anticompetitive effect that harms consumers in the relevant market."[4] *Ohio v. Am. Express Co.*, 585 U.S. 529, 541 (2018) ("*American Express*"); *see also Newcal Indus. v. Ikon Office Sols.*, 513 F.3d 1038, 1044 (9th Cir. 2008). Plaintiffs can plead anticompetitive effects and market power directly or indirectly. *American Express*, 585 U.S. at 541; *PLS.com v. Nat'l Ass'n of Realtors, Inc.*, 32 F.4th 824, 834 (9th Cir. 2022); *Rebel Oil Co. v. Atl. Richfield, Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995). Allegations regarding "reduced output, increased prices, or decreased quality in the relevant market" would be examples of direct evidence. *American Express*, 585 U.S. at 542 (cleaned up); *see also Rebel Oil*, 51 F.3d at 1434. Indirect proof would consist of allegations of "market power plus some evidence that the challenged restraint harms competition." *American Express*, 585 U.S.

---

[4]     The relevant market consists of a product market and a geographic market. *See, e.g., Coronavirus Rptr. v. Apple, Inc.*, 85 F.4th 948, 955 (9th Cir. 2023). PayPal does not challenge Plaintiffs' allegations of a nationwide geographic market.

at 542; *see also Rebel Oil*, 51 F.3d at 1434.

Finally, Plaintiffs must allege they have "antitrust standing." *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1054 (9th Cir. 1999). The factors courts apply to determine whether a plaintiff has standing under the Sherman Act include: "(1) the nature of the plaintiff's alleged injury; that is, whether it was the type the antitrust laws were intended to forestall; (2) the directness of the injury; (3) the speculative measure of the harm; (4) the risk of duplicative recovery; and (5) the complexity in apportioning damages." *Am. Ad. Mgmt.*, 190 F.3d at 1054 (citing *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters* ("*AGC*"), 459 U.S. 519, 535 (1983)). The Court refers to these factors as the "*AGC* factors."[5]

**C.    The Court Grants PayPal's Motion to Dismiss the Sherman Act Claim.**

PayPal's primary argument is that Plaintiffs still fail to plead antitrust standing, but it also challenges other elements of the Sherman Act claim. The Court addresses the latter challenges first because while no single *AGC* factor is dispositive, allegations of antitrust injury are "necessary." *Cargill, Inc. v. Monfort of Colorado Inc.*, 479 U.S. 104, 110 n.5 (1986); *see also Am. Ad. Mgmt.*, 190 F.3d at 1056 ("[W]ithout a violation of the antitrust laws, there can be no antitrust injury."). "Antitrust injury," in turn, requires Plaintiffs to allege their injury is the result of PayPal's allegedly unlawful conduct and is the type of injury antitrust laws were intended to prevent. *Am. Ad Mgmt.*, 190 F.3d at 1055.

**1.    Plaintiffs' Allegations of the Product Market Are Facially Sustainable.**

PayPal challenges Plaintiffs' allegations of the product market. A plaintiff "need not plead [the] relevant market with specificity." *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1120 (9th Cir. 2018). Because the validity of a relevant market usually is a factual question, dismissal under Rule 12(b)(6) is appropriate only when a plaintiff's definition of the market is "facially unsustainable." *Newcal*, 513 F.3d at 1045. Defining the relevant market is especially important in a case involving vertical restraints, which "often pose no risk to competition unless the entity

---

[5]    The Court previously determined the last two factors did not weigh against standing. *Sabol*, 2024 WL 3924686, at *4. PayPal does not address those factors in this motion, and the Court finds no basis to revisit those rulings.

5

imposing them has market power." *American Express*, 585 U.S. at 544 n.7.

In general, "[t]he outer boundaries [of a product market] are determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it." *Brown Shoe v. United States*, 370 U.S. 294, 325 (1962). "Cross-elasticity of demand refers to the extent to which consumers view two products as being reasonably interchangeable or substitutable for one another. Products or services that are reasonably interchangeable should be considered as being in the same market for the purpose of an antitrust claim." *Coronavirus Rptr.*, 85 F.4th at 955 (cleaned up). PayPal contends the eCommerce retail market is facially unsustainable because Plaintiffs fail to account for these principles.

The threshold step in the analysis is to define the product market in which "the alleged restraint occurs." *Epic Games v. Apple, Inc.*, 67 F.4th 946, 974 (9th Cir. 2023). Plaintiffs allege PayPal's Anti-Steering Rules cause anticompetitive effects in the "retail eCommerce market" by restraining and dictating prices charged in that market. Thus, Plaintiffs' theory of liability does not depend on what products they purchased; it depends on what retail market they used to purchase those products: brick-and-mortar or eCommerce. Courts within this Circuit have upheld the eCommerce retail market as a relevant product market, citing core differences between it and brick-and-mortar retail markets. *See, e.g., Brown v. Amazon.com, Inc.*, No. 2:22-cv-00965-JHC, 2023 WL 5793303, at *6-7 (W.D. Wash. Sept. 7, 2023); *Floyd v. Amazon.com, Inc.*, No. C22-1599-JCC, 2023 WL 3891973, at *4 (W.D. Wash. June 8, 2023); *De Coster v. Amazon.com, Inc.*, No. 21-cv-00693-RSM, 2023 WL 372377, at *5 (W.D. Wash. Jan. 24, 2023); *Frame-Wilson v. Amazon, Inc.*, 591 F. Supp. 3d 975, 990 (W.D. Wash. 2022).

Plaintiffs allege "[r]egulators, economists, customers and retailers alike recognize the eCommerce market "as a distinct retail market within" the United States. (FAC ¶ 86.) For example, they allege the U.S. Census Bureau has collected data on eCommerce sales since 1998. (*Id.*) The Bureau of Labor Statistics ("BLS") Producer Price Index "separately tracks the eCommerce industry group." (*Id.*) In contrast to the brick-and-mortar retail market, the eCommerce retail market: has lower overhead costs, which can lower barriers to entry; lower margins; improves access to information about goods; improves access to those goods; and attracts

6

a younger demographic. (*Id.* ¶¶ 86-90.) These allegations are not materially different from the allegations in *Frame-Wilson*, which that court found were plausible. 591 F. Supp. 3d at 990; *cf. Brown*, 2023 WL 5793303, at *6-7 (finding allegations of on-line retail marketplace market plausible); *De Coster*, 2023 WL 372377, at *5 (finding allegations of "Online Retail Sales Market" facially sustainable).

PayPal argues that Plaintiffs' reliance on the *Amazon.com* line of cases is inapt because Amazon.com competed as a retailer in the eCommerce market. PayPal contends the "proper" product market is the market for on-line payment platforms, in which it does compete. PayPal's role in the eCommerce retail market does distinguish this case from *Frame-Wilson*, *Brown*, and *De Coster*, but the Court concludes PayPal's argument is better addressed in connection with its argument that Plaintiffs fail to allege market power. *Cf. Sky Angel U.S., LLC v. Nat'l Cable Satellite Corp.*, 947 F. Supp. 2d 88, 103 n.3 (D.D.C. 2013) (finding defendant's argument that it did not compete in proposed market better addressed in context of market power).

The Court concludes Plaintiffs' proposed product market is facially sustainable and DENIES, IN PART, PayPal's motion.

**2.   Plaintiffs Fail to Allege PayPal Has Market Power.**

PayPal argues Plaintiffs' allegations of market power are insufficient. Plaintiffs argue they have directly alleged market power through the allegations at paragraphs 6, 43-75, 78-79, and 93 of the FAC. Plaintiffs also argue they allege market power indirectly because PayPal is accepted by 82% of the top 1000 eCommerce merchants. They posit this shows 82% of the market is foreclosed by the Anti-Steering Rules, a figure that would normally establish a prima facie case of market power. *See Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1206 (9th Cir. 1997) ("Courts generally require a 65% market share to establish a prima facie case of market power.").

Under either framework, Plaintiffs rely on the impact of the Anti-Steering Rules in the aggregate. PayPal argues Plaintiffs cannot impute market power to PayPal by aggregating its agreements with eCommerce merchants. However, in *Twin City Sportservice, Inc. v. Charles O. Finley & Co.*, the Ninth Circuit held "that it was proper for the district court to have aggregated

7

Sportservice's contracts in the relevant market in order to assess the Sherman Act violations resulting from these contracts." 676 F.2d 1291, 1302 (9th Cir. 1982); *see also Brown*, 2023 WL 5793303, at *10 (noting courts within Ninth Circuit "lean[] away from disallowing aggregation in pleading Section 1 claims") (quoting *Orchard Supply Hardware, LLC v. Home Depo., Inc.*, 967 F. Supp. 2d 1347, 1362 (N.D. Cal. 2013)).

The Court concludes aggregation is not the flaw in Plaintiffs' allegations of market power. The flaw is that Plaintiffs allege PayPal's power to impose the Anti-Steering Rules stems from its dominance as a payment platform. (FAC ¶¶ 7, 96.) Accepting Plaintiffs' position that payment platforms are part of the eCommerce retail market, Plaintiffs do not include any allegations about PayPal's rival platforms. Therefore, there are no facts from which the Court can reasonably infer PayPal is the dominant payment platform in that market.[6]

Because the Court concludes Plaintiffs fail to plead PayPal has market power, it GRANTS, IN PART, PayPal's motion to dismiss the Sherman Act claim on this basis. The Court now turns to PayPal's argument that Plaintiffs still fail to allege standing under the Sherman Act.

### 3. Plaintiffs Fail to Allege Federal Antitrust Standing Under the Discount Theory.

The Court previously concluded Plaintiffs' allegations relating to their discount theory were insufficient. Plaintiffs have not amended the allegations that support this theory. (*Compare* Complaint ¶¶ 39-45 *with* FAC ¶¶ 43-49.) Accordingly, the Court GRANTS, IN PART, PayPal's motion for the reasons set forth in *Sabol*, 2024 WL 3924686, at *3.

### 4. Plaintiffs Fail to Allege Federal Antitrust Standing Under the Pricing Theory.

#### a. The nature of Plaintiffs' injuries.

The first and most critical element of antitrust standing is antitrust injury, *i.e.*, "(1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from that which makes the conduct unlawful, and (4) that is of the type antitrust laws were intended to prevent." *Am. Ad Mgmt.*, 190 F.3d at 1055. For the reasons set forth in Section C.2, the Court concludes Plaintiffs

---

[6] This flaw also undermines Plaintiff's argument that new entrants to the eCommerce retail market cannot meaningfully constrain PayPal regarding its transaction fees.

fail to allege antitrust injury.

b. **The Alleged Injuries Are Derivative, Attenuated, and Speculative.**

"To assess the directness of [Plaintiffs'] injury," the Court looks "to the chain of causation between" the injuries and the alleged restraint in the eCommerce retail market. *Am. Ad Mgmt.*, 190 F.3d at 1058. "The harm may not be derivative and indirect or secondary, consequential, or remote." *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1004 (9th Cir. 2008). "Two factors have been identified by the Supreme Court as indicating the speculative nature of a damage claim: (1) the indirectness of the alleged injury, and (2) that the alleged effects may have been produced by independent factors." *Eagle v. Star-Kist Foods, Inc.*, 812 F.2d 538, 542 (9th Cir. 1987) (citing *AGC*, 452 U.S. at 542).

PayPal argues Plaintiffs' allegations that they were injured by overcharges remain too attenuated and speculative to satisfy this *AGC* factor. Plaintiffs rely on allegations that merchants who agree to the Anti-Steering Rules are PayPal's co-conspirators to argue their injuries are direct. Plaintiffs rely on *City of Vernon v. Southern California Edison* to support this argument. 955 F.2d 1361 (9th Cir. 1992). In that case, the court stated that "a conspiracy to monopolize may exist even where one of the conspirators participates involuntarily or under coercion." *Id.*, at 1371. In *Frame-Wilson*, the court relied on similar "co-conspirator" allegations to find the plaintiffs had antitrust standing, applying the "co-conspirator" exception to *Illinois Brick Co. v Illinois*, 431 U.S. 720, 729 (1977). 591 F. Supp. 3d at 983-84. The Court does not read *City of Vernon* to permit the inference of a conspiracy whenever parties enter a uniform contract, at least without some allegations that the drafter has power to impose the terms of the contract. As discussed above, Plaintiffs fail to allege facts showing PayPal has that power.[7]

The Court also concludes the facts in *Frame-Wilson* are distinguishable because of Amazon's status as a competitor and because the agreement in question bore directly on the prices charged by other e-Commerce retailers. *Id.* at 981. Plaintiffs' allegations here do not demonstrate

---

[7] Plaintiffs also do not rely on a hub-and-spoke conspiracy to plead their Sherman Act claim. Even if they did there are insufficient allegations to allege a horizontal agreement among eCommerce merchants. *See, e.g., City of Vernon*, 955 F.2d at 1371 ("[I]t would be most difficult to draw a reasonable inference of conspiracy where there was no meeting of the minds.").

a direct link between the Anti-Steering Rules and retail prices. For example, Plaintiffs previously relied on statements from PayPal, merchants, regulators, and "basic economic theory" to allege that transaction fees are baked into retail prices. Plaintiffs allege that transaction fees are "most merchants' highest operating cost after labor and are too much to absorb." That allegation also is not new. (*Compare* Complaint ¶ 55 *with* FAC ¶ 72.) Plaintiffs' amendments provide additional support for the proposition that transaction fees are factored into retail prices. (*Compare* Complaint ¶¶ 46-56 *with* FAC ¶¶ 62-75.) The Court did not take issue with that general proposition. Rather, it reasoned Plaintiffs' alleged injuries were indirect and speculative because they failed "to allege facts that explain the significance of the passed-on transaction fees relative to the other numerous pricing factors for any goods or services Plaintiffs allegedly purchased." *Sabol*, 2024 WL 3924686, at *3.[8] Plaintiffs' amendments do not remedy that pleading defect.

Accordingly, the Court GRANTS PayPal's motion to dismiss on this basis as well. Because the Court cannot say it would be futile, the Court will grant Plaintiffs one final opportunity to amend the Sherman Act claim.

### D. The Court Dismisses the State Law Claims Without Prejudice.

Plaintiffs assert the Court has jurisdiction under CAFA. The Court is not persuaded their allegations regarding the amount in controversy are sufficient. Accordingly, having disposed of the Sherman Act claim, the Court dismisses the state law claims without prejudice for lack of jurisdiction. The Court will give Plaintiffs leave to amend but they must include additional allegations to support their allegations of CAFA jurisdiction.

### CONCLUSION

For the foregoing reasons, the Court GRANTS, IN PART, AND DENIES, IN PART, PayPal's motion to dismiss the Sherman Act claim and dismisses the state law claims without prejudice for lack of jurisdiction. If Plaintiffs choose to amend, they shall file a second amended complaint by no later than December 12, 2025, and shall supplement their allegations regarding

---

[8]   At least some of the sources relied on by Plaintiffs in their allegations about the eCommerce market suggest other costs may be as high or higher. (*See, e.g.*, FAC ¶ 75 & n. 68, ¶ 88 n.94.)

10

CAFA's amount in controversy requirement.  PayPal shall respond to the amended complaint by January 9, 2026.

IT IS SO ORDERED.

Dated: November 5, 2025

_____
JEFFREY S. WHITE
United States District Judge