Patrick T. Hein (SBN 254431)
ALLEN OVERY SHEARMAN STERLING US LLP
140 New Montgomery Street, 10th Floor
San Francisco, CA 94105-2997
Tel.: (415) 616-1100
patrick.hein@aoshearman.com

Adam S. Hakki (admitted *pro hac vice*)
Richard Schwed (admitted *pro hac vice*)
ALLEN OVERY SHEARMAN STERLING US LLP
599 Lexington Ave.
New York, NY 10022
Tel.: (212) 848-4000
adam.hakki@aoshearman.com
rschwed@aoshearman.com

*Counsel for Defendants PayPal Holdings, Inc. and PayPal, Inc.*

[ADDITIONAL COUNSEL ON SIGNATURE PAGE]

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| CHRISTIAN SABOL and SAMANTHIA RUSSELL, LAURA MCKINNEY, CHELCIE BLAKE, GREGORY NOHRENBERG, and STEPHEN PHILLIPS, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PAYPAL HOLDINGS, INC., a California Corporation, PAYPAL, INC., a California Corporation,<br><br>Defendants. | Case No.: 4:23-cv-05100-JSW<br><br>**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS PAYPAL HOLDINGS, INC. AND PAYPAL INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Judge: Hon. Jeffrey S. White<br><br>Date: March 20, 2026<br>Time: 9:00 AM |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................................ ii

INTRODUCTION ............................................................................................................................... 1

ARGUMENT ....................................................................................................................................... 3

    I.    The SAC Still Does Not Cure Plaintiffs' Lack of Antitrust Standing ................. 3

        A.    Plaintiffs Have Not Alleged Antitrust Injury ........................................... 3

        B.    Plaintiffs' Alleged Injuries Remain Incurably Speculative and Indirect . 4

        C.    *Illinois Brick* Remains Inapplicable Here ................................................. 6

    II.    The SAC Still Does Not State an Antitrust Claim ................................................. 7

        A.    The "eCommerce Payment Processing Services Market" Is Not a Properly Defined Antitrust Market ........................................................... 7

        B.    Plaintiffs Fail to Plausibly Allege That PayPal Has Power In Any Market ....................................................................................................... 8

        C.    Plaintiffs Do Not Plausibly Allege the User Agreement Is Anticompetitive ..................................................................................... 10

    III.    Plaintiffs' State Law Claims Remain Duplicative and Deficient ....................... 11

CONCLUSION ................................................................................................................................. 12

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*,
    190 F.3d 1051 (9th Cir. 1999) ..................................................................................................3

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
    459 U.S. 519 (1983) ..............................................................................................................4, 6

*Brantley v. NBC Universal, Inc.*,
    2008 WL 11338585 (C.D. Cal. Mar. 10, 2008) .....................................................................11

*Cargill, Inc. v. Montfort of Colorado, Inc.*,
    479 U.S. 104 (1986) ..................................................................................................................3

*CoStar Grp., Inc. v. Comm. Real Est. Exch. Inc.*,
    619 F. Supp. 3d 983 (C.D. Cal. 2022) .....................................................................................7

*Coronavirus Rptr. v. Apple, Inc.*,
    2021 WL 5936910 (N.D. Cal. Nov. 30, 2021) .......................................................................10

*City of Vernon v. S. Cal. Edison*,
    955 F.2d 1361 (9th Cir. 1992) ..............................................................................................6, 7

*De Los Santos v. Specialized Loan Servicing, LLC*,
    2023 WL 7110347 (N.D. Cal. Oct. 27, 2023) .........................................................................12

*Epic Games, Inc. v. Apple, Inc.*,
    67 F.4th 946 (9th Cir. 2023) ..................................................................................................12

*Gibson v. Cendyn Grp., LLC*,
    148 F.4th 1069 (9th Cir. 2025) ..............................................................................................11

*Flaa v. Hollywood Foreign Press Ass'n*,
    55 F.4th 680 (9th Cir. 2022) ....................................................................................................7

*Frame-Wilson v. Amazon.com, Inc.*,
    591 F. Supp. 3d 975 (W.D. Wash. 2022) ................................................................................6

*FTC v. Qualcomm Inc.*,
    969 F.3d 974 (9th Cir. 2020) ....................................................................................................7

*Illinois Brick Co. v. Illinois*,
    431 U.S. 720 (1977) ..................................................................................................................6

*Jones v. Micron Tech., Inc.*,
    400 F. Supp. 3d 897 (N.D. Cal. 2019) ................................................................................5

*Mir v. Fosburg*,
    646 F.2d 342 (9th Cir. 1980) ............................................................................................12

*In re Nat'l Football League's Sunday Ticket Antitrust Litig.*,
    933 F.3d 1136 (9th Cir. 2019) ............................................................................................6

*Ohio v. Am. Express Co.*,
    585 U.S. 529 (2018) ........................................................................................................7, 9

*In re Payment Card Interchange Fee & Merchant Disc. Antitrust Litig.*,
    714 F. Supp. 3d 65 (E.D.N.Y. 2024) ..................................................................................8

*Rebel Oil Co., Inc. v. Atl. Richfield Co.*,
    51 F.3d 1421 (9th Cir. 1995) ..............................................................................................3

*Reilly v. Apple Inc.*,
    578 F. Supp. 3d 1098 (N.D. Cal. 2022) .............................................................................7

*Somers v. Apple, Inc.*,
    729 F.3d 953 (9th Cir. 2013) ..............................................................................................4

*Twin City Sportservice, Inc. v. Charles O. Finley & Co., Inc.*,
    676 F.2d 1291 (9th Cir. 1982) ..........................................................................................11

*United States v. Microsoft Corp.*
    253 F.3d 34 (D.C. Cir. 2001) .............................................................................................8

**Statutes**

The Sherman Act,
    15 U.S.C. § 1, *et seq.* ............................................................................................. *passim*

**Rules**

Fed. R. Civ. P. 12(h)(3) ............................................................................................................11

**INTRODUCTION**

Plaintiffs' Opposition[1] confirms that the SAC lacks well-pleaded factual allegations that remedy the multiple fatal deficiencies in Plaintiffs' theory that have led this Court to twice dismiss their claims with detailed instructions as to what to plead to survive dismissal. Plaintiffs have not followed this Court's instructions because they cannot do so, and the SAC should therefore be dismissed with prejudice.

Unable to defend the SAC's sparse "new" factual allegations, the Opposition relies principally on two tactics: (1) disregarding the substance of this Court's prior orders and (2) falsely arguing that PayPal has impermissibly injected factual disputes inappropriate for resolution on the pleadings. Neither tactic is availing. The SAC alleges no new facts that would alter the Court's prior analysis, and the Opposition presents no reason for this Court to revisit its prior holdings. Rather than alleging facts about what goods or services they bought, how those goods or services were allegedly overpriced, or how PayPal's ADPs allegedly caused them to be overpriced, Plaintiffs rely on purported "supporting documentation and economic analyses." (Opp. at 2.) But these materials do not support Plaintiffs' claims; they directly undermine them, as this Court previously observed. (ECF No. 79 at 10 n.8.) Plaintiffs are not entitled to support their claims with documentary evidence that contradicts their arguments and then argue that the contradiction of their own making excuses them from pleading a plausible claim and entitles them to discovery.

The Opposition cannot obscure the fact that the SAC does not plead the required elements of Plaintiffs' claims:

<u>No Antitrust Standing</u>: The Court directly instructed Plaintiffs (twice) that, given the inherently indirect and speculative relationship (if any) between their alleged injuries and PayPal's ADPs, to allege antitrust standing they must plead facts to "explain the significance of the passed-on transaction fees relative to the other *numerous* pricing factors for any goods

---

[1] Plaintiff's Opposition (ECF No. 86) is cited herein as "Opp." and PayPal's Opening Brief (ECF No. 82-1) is cited herein as "Op. Br." Capitalized terms otherwise have the same meanings as set forth in PayPal's Opening Brief. Unless otherwise indicated, internal quotation marks and citations are omitted.

or services" they purchased. (*Id.* at 10 (emphasis added).) The Opposition concedes that the SAC fails to do so and instead posits an implausible world in which the only pricing inputs that eCommerce merchants consider when pricing any good or service they sell are transaction fees and website hosting fees. This implausible hypothetical is nonresponsive and legally insufficient. And because Plaintiffs have chosen to rely on hypothetical generalizations instead of alleging any injury in connection with any good or service *they allegedly purchased anywhere, from anyone*, they again fail to establish antitrust injury, a necessary predicate to antitrust standing.

<u>No Viable Market</u>: Despite the Court's acceptance, for pleading purposes, of the purported eCommerce Market, the SAC introduced a new alternative "eCommerce Payment Processing Services Market." The Opposition makes clear that Plaintiffs did so because they cannot plausibly allege that PayPal has market power in the vast proposed eCommerce Market and they instead hope to show such power in their alternative proposed market. This mix-and-match approach is improper because it is well-settled that the very purpose of defining a relevant product market at the outset is to measure the defendant's power within *that defined market*, not an alternative market Plaintiffs find more convenient. Regardless, the SAC's cursory attempt to define Plaintiffs' alternative eCommerce Payment Processing Services Market is insufficient and does not comply with basic market definition principles.

<u>No Market Power</u>: Plaintiffs' attempted market definition sleight-of-hand in any event fails because the SAC does not plausibly plead that PayPal wields power in any market. Plaintiffs continue to rely on acceptance or "penetration" rates as a proxy for market power, but such rates are irrelevant where multihoming is ubiquitous, as in online payments.

<u>No Cognizable Anticompetitive Effects</u>: The Opposition does not dispute that the SAC simply reprises the FAC's defective allegations, and otherwise argues only that the Ninth Circuit did not mean what it said in *Gibson* when it held that aggregation is impermissible without complementary, well-pleaded allegations of conspiracy.

<u>No Viable State Law Claims</u>: Despite failing (twice) to allege anything that would distinguish their state law claims from their Sherman Act claim, the Opposition now claims

that the state law claims are distinct.  The Opposition does not and cannot say why or how, because the SAC is silent in this regard.  There is no basis to revisit this Court's prior dismissals.

# ARGUMENT

## I. The SAC Still Does Not Cure Plaintiffs' Lack of Antitrust Standing

Plaintiffs have not cured the antitrust standing defects that have twice required dismissal of their claims, despite this Court's clear instructions as to what Plaintiffs must plead to adequately allege such standing.  Accordingly, the SAC should be dismissed with prejudice.

### A. Plaintiffs Have Not Alleged Antitrust Injury

Antitrust injury is an indispensable requirement for antitrust standing.  *See Am. Ad. Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1055 (9th Cir. 1999) (citing *Cargill, Inc. v. Montfort of Colorado, Inc.*, 479 U.S. 104, 110 n.5 (1986)).  To plead such injury, a plaintiff must plausibly allege both that a defendant wields market power and that the plaintiff "personally suffered" alleged overcharges that "flow[]" from the alleged anticompetitive conduct.  *See id.* at 1055; *Rebel Oil Co., Inc. v. Atl. Richfield Co.*, 51 F.3d 1421, 1444 (9th Cir. 1995).  The FAC failed on both accounts (*see* ECF No. 79 at 7-8), and the SAC similarly fails to plausibly allege antitrust injury.[2]

*First*, despite the requirement that they allege a "personally suffered" injury, Plaintiffs contend that they need not allege any details about the transactions that purportedly give rise to their unspecified alleged injuries.  Instead, they argue it is sufficient to allege that overcharges are imposed based on PayPal's alleged 3.5% transaction fee across *every single* eCommerce transaction such that someone, somewhere must have overcharged them because of PayPal's ADPs.  (Opp. at 4-5, 8-9.)  But Plaintiffs do not allege facts to support such a uniform overcharge; instead, they simply repeat the allegation that PayPal had industry-high 3.5% transaction fees.  This is not a substitute for well-pleaded *factual* allegations from which the Court or PayPal can infer that any prices Plaintiffs actually paid were supracompetitive.  *See*

---

[2] Plaintiffs' failure to plausibly allege that PayPal possesses market power (*see* Section II.B, *infra*) also precludes a finding of antitrust injury.  (*See* ECF No. 79 at 7-8.)

*Somers v. Apple, Inc.*, 729 F.3d 953, 963-64 (9th Cir. 2013) (affirming dismissal of complaint alleging overcharges for lack of antitrust standing *despite* factual allegations that defendant's prices were higher than competitors).

*Second*, the very sources that Plaintiffs rely on directly contradict their theory of antitrust injury: that the ADPs impose uniform overcharges across merchants and products. In particular, Plaintiffs rely upon a Merchants Payments Coalition advocacy piece, which states that the average payment processing fee is 2.26%, and estimates the amount that consumers pay each year in passed-through fees based on that figure, with the caveat that it is "difficult to calculate," because "purchases are split" among different payment methods, each with distinct transaction fees.[3] This negates any reasonable inference that there is anything common as to whether and what extent merchants pass on transaction fees to consumers, much less that the ADPs impose PayPal's transaction fees as an overcharge in every eCommerce transaction or even to any of Plaintiffs' (non-pleaded) transactions.

*Third*, despite two opportunities to do so, Plaintiffs still do not explain how their injuries possibly can "flow[] from" PayPal's alleged conduct, when retail prices necessarily depend upon intervening independent decisions of millions of eCommerce merchants and rival platforms. (*See* ECF No. 64 at 5-6; ECF No. 79 at 8-10; *see also* Section I.B, *infra*.)

**B.      Plaintiffs' Alleged Injuries Remain Incurably Speculative and Indirect**

This Court has twice held that Plaintiffs' alleged injuries are too indirect and speculative to confer antitrust standing. (ECF No. 64 at 5-6; ECF No. 79 at 8-10); *see also Associated Gen. Contractors of Cal, Inc. v. Cal. State Council of Carpenters* ("*AGC*"), 459 U.S. 519, 541-45 (1983) (injuries that are indirect or speculative fail to confer antitrust standing). They are indirect, because, as this Court observed, Plaintiffs "do not allege that they have a relationship with PayPal" and do not "seek damages for purchases made using PayPal or for fees paid to PayPal." (ECF No. 64 at 4.) And they are speculative and attenuated because they "necessarily depend[] on the independent actions of millions of

---

[3] Merchants Payment Coalition, *Credit Card 'Swipe' Fees Could Cost Consumers Over $500 Million for Father's Day* (cited ¶ 74 n.66).

merchants" and still further on the independent actions of rival payment platforms. (*Id.* at 5.) The Court therefore twice gave Plaintiffs direct instructions to "allege facts that explain the significance of the allegedly passed-on transaction fees relative to the other numerous pricing factors for any goods or services Plaintiffs allegedly purchased." (ECF No. 64 at 5-6; ECF No. 79 at 10.)

The Opposition's attempt to defend the SAC demonstrates that Plaintiffs have not come close to heeding this Court's instructions. The Opposition concedes that the sole other pricing factor the SAC identifies is the purported cost of setting up a basic eCommerce website. (Opp. at 7-8.) This is nonresponsive and fails to provide plausible factual allegations from which the Court could infer how PayPal's fees purportedly interact with the "*numerous* components" of a final product and other factors that "all . . . *collectively* determine" its retail price. *Jones v. Micron Tech. Inc.*, 400 F. Supp. 3d 897, 913 (N.D. Cal. 2019) (first emphasis added). Put simply, Plaintiffs' hypothetical eCommerce merchant whose only pricing factors are PayPal's fees and a website subscription cost facially bears no plausible resemblance to the economic reality of any eCommerce merchant (much less all eCommerce merchants or any unspecified eCommerce merchant from whom Plaintiffs made a purchase) because it ignores every other factor that impacts retail prices—such as the underlying cost of the good or service being provided.

The Opposition attempts to excuse this failure by arguing that the other costs eCommerce merchants undoubtedly face—which this Court already has observed are "as high or higher" than PayPal's alleged transaction fees (ECF No. 79 at 10 n. 8)—may not be considered because they are "extraneous factual allegations." (Opp. at 8.) These other costs are "extraneous" only in that the SAC, contrary to the Court's repeated instructions, says nothing about any of them, much less how they affect eCommerce merchants' retail pricing decisions. Plaintiffs thus fail to articulate a plausible, non-speculative basis for their theory that their alleged injuries were caused by PayPal's ADPs. That failure is a pleading defect that defeats their claim of antitrust standing, not a free ticket past a motion to dismiss.

### C. *Illinois Brick* Remains Inapplicable Here

Because they cannot satisfy *AGC*'s standing requirements, Plaintiffs renew their argument that they should be excused from doing so because they purportedly satisfy the co-conspirator exception to the *Illinois Brick* framework. (Opp. at 5-6.) This Court has already rejected this flawed theory once and should do so again here. (ECF No. 79 at 9-10.)

As a threshold matter, the *Illinois Brick* framework, which restricts claims to direct purchasers and bars claims by indirect purchasers, does not apply here. Plaintiffs effectively concede as much by arguing that where conspiracy allegations are present "*Illinois Brick* is simply not applicable." (Opp. at 5 (quoting *In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 933 F.3d 1136, 1157 (9th Cir. 2019)).) As the Court has already observed, Plaintiffs are not purchasers of anything sold by PayPal (or anyone in PayPal's distribution chain), whether directly or indirectly. (ECF No. 64 at 6 n.1.) Accordingly, PayPal has never asserted that the *Illinois Brick* framework bars Plaintiffs' claims, and Plaintiffs are thus inappropriately attempting to twist an exception from a doctrinal bar PayPal has never invoked into an affirmative grant of standing.

But even if the co-conspirator exception were to apply (and it does not), Plaintiffs' attempt to invoke it fails because, as this Court previously held, *Plaintiffs do not allege a conspiracy or any other horizontal coordination between merchants.* (ECF No. 79 at 9 & n.7.) Because the SAC does not and could not plead adequate facts suggesting a conspiracy, Plaintiffs suggest that this Court should revisit its prior holding because the co-conspirator exception does not actually require a conspiracy. (Opp. at 5-6.) But as this Court previously recognized, adopting Plaintiffs' position would "permit the inference of a conspiracy whenever parties enter a uniform contract" (ECF No. 79 at 9), allowing the co-conspirator "exception" to swallow the rule. Plaintiffs' position also is unsupported by the authorities they cite, each of which was expressly based on actual allegations of a conspiracy or horizontal coordination, which concededly are not present here. *See NFL*, 933 F.3d at 1153, 1156-57 (alleging output-restricting horizontal conspiracy); *Frame-Wilson v. Amazon.com, Inc.*, 591 F. Supp. 3d 975, 984 (W.D. Wash. 2022) (alleging horizontal price-fixing conspiracy); *City of Vernon v. S. Cal.*

*Edison*, 955 F.2d 1361, 1371 (9th Cir. 1992) (affirming dismissal where plaintiff failed to establish "a reasonable inference of conspiracy where there was no meeting of the minds"). Plaintiffs offer no basis for the Court to revisit its prior holding.

## II.    The SAC Still Does Not State an Antitrust Claim

Beyond their lack of standing, Plaintiffs also fail to allege the necessary elements to state an antitrust claim under Section 1 of the Sherman Act (or its state law equivalents).

### A.    The "eCommerce Payment Processing Services Market" Is Not a Properly Defined Antitrust Market

PayPal's Opening Brief established that the SAC's cursorily described new proposed market—the "eCommerce Payment Processing Services Market"—is not a facially viable antitrust market because it is defined without specifying the products in the market or their reasonable substitutes. (Op. Br. at 10-12.) Plaintiffs' failure to comply with these basic principles of market definition mandates rejection of Plaintiffs' alternative market. *Reilly v. Apple Inc.*, 578 F. Supp. 3d 1098, 1109 (N.D. Cal. 2022).

Plaintiffs do not meaningfully defend their new alternative market and instead admit that they introduced it "prophylactically" to address their inability to allege that PayPal has market power in their vast proposed eCommerce Market. (Opp. at 12-13.) The Court should not permit this. Market definition is the "threshold step in any antitrust case," *FTC v. Qualcomm Inc.*, 969 F.3d 974, 992 (9th Cir. 2020), because defining the market is necessary to "measure the defendant's ability to lessen or destroy competition." *Ohio v. Am. Express Co.*, 585 U.S. 529, 543 (2018). Because the very purpose of pleading a relevant market is to assess the impact of an alleged restraint and to discern whether the defendant has power "within that market," Plaintiffs' self-serving, mix-and-match approach is improper. *See CoStar Grp., Inc. v. Comm. Real Est. Exch. Inc.*, 619 F. Supp. 3d 983, 994 (C.D. Cal. 2022); *Flaa v. Hollywood Foreign Press Ass'n*, 55 F.4th 680, 693-95 (9th Cir. 2022) (requiring plaintiff to "allege *both* that a relevant market exists *and* that the defendant has power within that market" (emphases added)).

**B.     Plaintiffs Fail to Plausibly Allege That PayPal Has Power In Any Market**

The SAC also should be dismissed because Plaintiffs independently fail to allege that PayPal wields market power within either of their proposed markets. Indeed, Plaintiffs effectively concede that they cannot allege that PayPal has market power in their vast proposed eCommerce Market[4] by admitting that they alleged the alternative eCommerce Payment Processing Market "prophylactically" to attempt to allege PayPal's power in this alternative market instead. (Opp. at 12.) This attempt fails for the same reasons, including the SAC's failure to include well-pleaded allegations about PayPal's purported rivals in this nebulous alternative market.

Plaintiffs first contend that they need not plead any facts about PayPal's market share because PayPal's market power "can be established directly based on its ability to enforce [its ADPs] across the market." (Opp. at 10.) But they do not allege a single instance of such purported enforcement by PayPal. Instead, they again rely on the same merchant penetration rates as purported indirect proof of PayPal's market power (addressed below), and point to the terms of the ADPs themselves as direct proof of PayPal's market power. (*Id.* (citing ¶ 100).) Plaintiffs' argument that the existence of a challenged restraint *ipso facto* is direct proof of market power is circular and would effectively eliminate the need for any market-related inquiries. *See, e.g.*, *United States v. Microsoft Corp.*, 253 F.3d 34, 51-52 (D.C. Cir. 2001) ("[D]irect proof is only rarely available[.]"). Unsurprisingly, Plaintiffs' authorities do not support this proposed drastic expansion of direct evidence. *See In re Payment Card Interchange Fee & Merchant Disc. Antitrust Litig.*, 714 F. Supp. 3d 65, 94-95, 99 (E.D.N.Y. 2024) (holding that only "empirical evidence" "based on systematic research or analysis of experience, experiment, or observation" can support a direct showing of market power).

Plaintiffs' indirect-proof allegations fare no better. Plaintiffs argue, in essence, that the source of PayPal's market power is its high consumer-penetration rates, and that the figures reflecting PayPal's high merchant-penetration rates are proof that PayPal wields its market

---

[4] As established in PayPal's Opening Brief, the SAC does not contain any "new" allegations to attempt to cure the FAC's failure to allege PayPal wields market power in the eCommerce Market. (Op. Br. at 13.)

power to impose ADPs because eCommerce merchants lack the "practical ability" to evade those ADPs by ceasing to accept PayPal, lest they "los[e] customers loyal to PayPal." (Opp. at 11.) This argument fails for several, independently fatal reasons.

*First*, Plaintiffs continue to ignore the fundamental flaw in their argument: that eCommerce consumers routinely use multiple payment methods and eCommerce merchants multihome with ubiquity. (*See* ¶ 33.) These practices render penetration rates useless to discern PayPal's actual popularity as a payment method and, thus, to assess whether an eCommerce merchant has the practical ability to evade the ADPs by simply not accepting PayPal. It costs eCommerce merchants *nothing* to offer PayPal as a form of payment (*see* ¶¶ 75-77); penetration figures alone are thus, more consistent with competitive parity among PayPal and its rivals than they are with any claim that PayPal is a dominant form of payment. Plaintiffs must plead transaction volumes to plausibly allege that a two-sided transaction platform, like PayPal, wields market power such that eCommerce merchants lack the "practical ability" to cease using PayPal in response to purportedly anticompetitive behavior.[5] *See Ohio*, 585 U.S. at 545 ("[C]redit cards determine their market share by measuring the volume of transactions they have sold.").

*Second*, the SAC mischaracterizes and misstates the penetration-rate figures upon which Plaintiffs' market-dominance allegations are premised. For example, the SAC does not provide a merchant penetration rate for the relevant geographic market—the United States—and does not allege or cite any sources that provide a meaningful comparison between PayPal's penetration rates in the United States with its rivals. (*See* ¶ 100.)

*Finally*, and most fundamentally, Plaintiffs do not plausibly allege that PayPal in fact has a dominant share of transactions in *any* market. Their sole attempt to do so rests upon a mischaracterization of a Statista article incorporated by reference into the SAC, which they claim shows that PayPal "appeared as a payment option on nearly twice the number of domains as the nearest competitor (Stripe)." (¶ 101.) The article, in fact, does not say

---

[5] Court assessing market power in the context of two-sided payment platforms have uniformly looked to transaction volume rather than acceptance rates. *See, e.g.*, *Ohio*, 585 U.S. at 545. Plaintiffs identify no authority to the contrary.

anything about payment *options* and purports only to provide global penetration rates (not U.S. transaction volumes) for payment *processing*. (¶ 47.) Payment options (means by which consumers can pay for goods online) and payment processing (means by which merchants can process such payments) are entirely distinct products. The SAC and the materials it incorporates lump together these products (among many other payment-related or payment-adjacent products and services) without Plaintiffs ever attempting to differentiate which are substitutes for PayPal's payments platform. (*See* Op. Br. at 10-11.) The SAC's attempt to compare PayPal to a business-facing backend payment processing solution that does not interact with consumers (Stripe (*see* ¶ 47)) only illustrates Plaintiffs' failure to define an appropriate payments market and says nothing about PayPal's power in any market. The Opposition contains no defense of these mischaracterizations because there is none.

### C. Plaintiffs Do Not Plausibly Allege the User Agreement Is Anticompetitive

The SAC's allegations regarding the ADPs' purported effects on competition are unchanged from those alleged in the FAC and, therefore, do nothing to remedy the deficiencies identified by PayPal in the prior round of motion to dismiss briefing.[6] (*See* ECF No. 72-1 at 18-19.) Specifically, the SAC does not contain any plausible allegations that the ADPs impede merchants from accepting other payment methods (and indeed affirmatively alleges the opposite (¶ 31)) or competing for transactions, and instead simply asserts that that the ADPs harm competition by allegedly increasing all prices, everywhere. This is insufficient. *See Coronavirus Rptr. v. Apple Inc.*, 2021 WL 5936910, at *14 (N.D. Cal. Nov. 30, 2021) (without more, "increase[ed] [passthrough] prices to consumers" are insufficient because they "may arise for procompetitive reasons").

Moreover, the Opposition directly concedes that Plaintiffs' theory depends on the aggregation of the purported anticompetitive effects of PayPal's User Agreements across all PayPal-accepting eCommerce merchants. (*See* Opp. at 11-12.) Plaintiffs claim such

---

[6] Despite not amending any of their anticompetitive effects allegations, Plaintiffs assert, without basis, that the Court cannot consider PayPal's prior briefing on this issue and that PayPal should have re-briefed those issues here. (Opp. at 14 n.8.) PayPal has no objection to the Court considering Plaintiffs' prior briefing on this issue as well, but Plaintiffs' suggestion that PayPal was required to restate its arguments in full here is baseless.

aggregation is justified under *Twin City Sportservice, Inc. v. Charles O. Finley & Co., Inc.*, 676 F.2d 1291, 1302 (9th Cir. 1982), but as the Ninth Circuit made clear last year in *Gibson v. Cendyn Grp., LLC*, 148 F.4th 1069 (9th Cir. 2025), *Twin City* does not permit *carte blanche* aggregation; rather, aggregation is potentially permissible only where there are well-pleaded conspiracy allegations. *See Gibson*, 148 F.4th at 1088 (prohibiting aggregation of uniform agreements "absent a conspiracy").[7] As this Court has already found (ECF No. 79 at 9 & n.7), Plaintiffs do not come close to alleging a conspiracy between and among PayPal and its accepting merchants, and Plaintiffs therefore must "plead facts which demonstrate each [PayPal User Agreement] ha[d] a discrete effect on competition." *See Gibson* 148 F.4th at 1088. Because Plaintiffs cannot conceivably do so, Plaintiffs' Sherman Act claim should be dismissed for failure to plead cognizable anticompetitive effects.

### III. Plaintiffs' State Law Claims Remain Duplicative and Deficient

This Court previously dismissed Plaintiffs' state law claims because they were "based on the same allegations as their Shearman Act claim." (ECF No. 64 at 7-8.) In response, Plaintiffs tacked on seven new state law claims in the FAC but twice chose not to add any allegations in either the FAC or the SAC to distinguish these claims—whether asserted under state antitrust or consumer protection laws—in any way from their Sherman Act claim. The Opposition's attempts to save these duplicative and defective claims are unavailing.[8]

Plaintiffs' argument that their state law claims are not, in fact, "coterminous" with their Sherman Act claim comes too late and lacks any foundation in well-pleaded facts. (Opp. at 14.) Indeed, despite belatedly arguing that their claims are distinct, the Opposition does not

---

[7] *See also, e.g., Brantley v. NBC Universal, Inc.*, 2008 WL 11338585, at *3 n.3 (C.D. Cal. Mar. 10, 2008) (finding plaintiffs failed to plead market power and rejecting "claim that they can aggregate the effects of defendants' actions even though they are alleged to have acted independently and not collectively").

[8] Plaintiffs also argue that "PayPal does not dispute that the Court has CAFA jurisdiction" over Plaintiffs' state law claims. (ECF No 86 at 14.) This argument misunderstands the nature of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). The Court found the FAC's jurisdictional allegations insufficient and directly instructed Plaintiffs to supplement them with detail regarding the amount in controversy so that it could evaluate its own jurisdiction. (ECF No. 79 at 10.) The Opposition does not even attempt to argue that Plaintiffs have complied with that instruction.

identify a single factual allegation that is distinct from those underlying their Sherman Act claim. The time for Plaintiffs to have added such allegations was in the FAC (or in the SAC), and the Opposition does not even try to argue that Plaintiffs did so. Plaintiffs' attempt to invoke *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946 (9th Cir. 2023), is similarly well off the mark. The fact that it may be theoretically possible to plead and prove a distinct UCL claim says nothing about whether Plaintiffs have done so here. They have not, as this Court already has held. (ECF No. 64 at 7-8.)

Plaintiffs' argument that PayPal has "suppl[ied] no basis" to support dismissal of Plaintiffs' state law claims (Opp. at 14) fares no better. PayPal has supplied multiple, independently sufficient bases for their dismissal, including that they are duplicative (as the Court held), that Plaintiffs lack standing to assert them (as the Court also held), and that Plaintiffs in any event failed to state any state law claim. PayPal has no objection to the Court considering Plaintiffs' arguments in prior briefing as to these defective claims, but their suggestion that PayPal was required to re-brief these arguments here—when Plaintiffs twice chose not to supplement their allegations in response to the Court's dismissal—is disingenuous.

## CONCLUSION

For these reasons, and those set forth in the Opening Brief, the SAC should be dismissed. Because Plaintiffs have failed in their "one final opportunity" (ECF No. 79 at 10), after three attempts, to plead a viable challenge to the ADPs, the dismissal should be with prejudice as to all claims. *See, e.g.*, *De Los Santos v. Specialized Loan Servicing, LLC*, 2023 WL 7110347, at *1 (N.D. Cal. Oct. 27, 2023) ("Because [Plaintiff] has already had two chances to amend [the] complaint, all claims are now DISMISSED with prejudice."); *see also Mir v. Fosburg*, 646 F.2d 342, 347 (9th Cir. 1980).

| | | |
|---|---|---|
| 1 | Dated: February 13, 2026 | Respectfully submitted, |
| 2 | | |
| 3 | | /s/ *Richard Schwed* <br> Patrick T. Hein (SBN 254431) |
| 4 | | 140 New Montgomery Street, 10th Floor <br> San Francisco, CA 94105-2997 |
| 5 | | Tel.: (415) 796-4160 <br> patrick.hein@aoshearman.com |
| 6 | | Adam S. Hakki (admitted *pro hac vice*) |
| 7 | | Richard Schwed (admitted *pro hac vice*) <br> 599 Lexington Ave. <br> New York, NY 10022 |
| 8 | | Tel.: (212) 848-4000 <br> adam.hakki@aoshearman.com |
| 9 | | rschwed@aoshearman.com |
| 10 | | Todd M. Stenerson (admitted *pro hac vice*) <br> 401 9th Street, NW, Suite 800 |
| 11 | | Washington, D.C. 20004 <br> Tel.: (202) 508-8000 |
| 12 | | todd.stenerson@aoshearman.com |
| 13 | | Rachel Mossman Zieminski (admitted *pro hac vice*) |
| 14 | | 2601 Olive Street, 17th Floor <br> Dallas, TX 75201 <br> Tel.: (214) 271-5777 |
| 15 | | rachel.zieminski@aoshearman.com |
| 16 | | ALLEN OVERY SHEARMAN STERLING US LLP |
| 17 | | *Attorneys for Defendants PayPal Holdings, Inc. and PayPal, Inc*. |